Let's go ahead and get started with our first case, which is Miguel-Pena v. Garland. And Ms. Jones. Good morning. May it please the court. Keep on lowering that microphone just a bit. Thank you. Sorry. Yeah. We are here this morning as part of what an organizational systems analyst would call a quality control feedback loop. We call it judicial review of agency actions. The general goal of quality control feedback is to timely correct small errors before they proliferate. In preparing for this, there are two related experiences that I've had recently. Well, one case that is a quality control wonderful example of the effectiveness of feedback is the court's entire line of cases in the Pereira v. Chavez. And I indicate that that's a good example of quality control because although it took two rounds to get to the Supreme, to get to convince the government that the Supreme Court meant what it said, that the language of the statute could not be ignored, once it convinced the government, government changed. I don't think I have seen in the last two years a notice to appear that was issued without a date or time. Written pleadings are now normative whenever the counsel is involved. And the courts are empowered themselves, which they weren't before, to dismiss notices to appear that are not properly completed. Should there be a prejudice requirement? I mean, your client's lawyer showed up at the right time and place. That has been the argument for why those things don't matter since 1996, 1997 actually, when IRIRA took effect. The board itself has held that because this is a mandatory claims processing argument issue, which they held in Madre Fernandez, it does not require harm. It does not require showing harm. So that's the agency's perspective on it. I would argue that that's the appropriate ruling to be made because that's how the agency has chosen to handle the decision. By contrast to the effectiveness of trips to the Supreme Court in those issues. Could I just come back to your last point? Why would the same apply when you're before the circuit court? In other words, why shouldn't you have to show prejudice at this point? Because the agency's ruling should be controlling on how this is perceived and handled within the legal system. Well, let's say there is a prejudice. Was there any prejudice here? Arguably not. The reality is nobody knows because I don't know, we don't know. It was never developed in the record. To what extent Ms. Miguel-Pena had to search, look, find counsel to try and figure out where her case had been filed, when her hearing was. Now I think you've moved away from the Pereira issues, right? As I read your briefs, there are three service-related issues. One is the Pereira issue, the failure to include the notice in time of the hearing in the notice to appear. Second is the absence of page two of the charging documents in the documents that were filed and you didn't know that, or your predecessor didn't know that until the BIA record had been formalized. And lastly, that there was invalid service of process. No, there's actually another issue. The notice to appear had the wrong court on it. I'm sorry, and it had Miami instead of Salt Lake City. So with that issue, the absence of page two of the certificate of service, the BIA held, as I understand it, that it had not been presented to the immigration judge. So the BIA held that it had not been exhausted. Don't you have to have exhausted with the immigration judge? How do you raise an issue with the immigration judge when the case is before the board, the immigration judge no longer has any jurisdiction? I would assume that if I'm the lawyer before the immigration judge, which was the same lawyer, and I know that my client had not been served, or that I asked my client, where I look at the record before the immigration judge, and it had Miami instead of Salt Lake City, and it had no page two for the certificate of service, I stand up and say, immigration judge, I'm specially appearing, I move to quash the notice to appear, because there has been no valid charge. Except that there is no such thing as a special appearance in immigration court. The minute you appear... Let's say there's no special appearance. You can't... He had the inability to say to the immigration judge that these were service-related defects with the notice to appear. He could have said that. And the minute you said that at that particular period in time, the immigration judge would have said, but you're here. So what was the harm? What's the error?  Okay. But I think the point that the court is making in this, Chavez, is that the statutory language should not be ignored. And that is effectively what the government has been doing for 20 years. Now they're not. Because the Supreme Court told them in this, Chavez, that the statutory language cannot be ignored. Now, we're talking about how you fix that. And what the consequences are for the thousands of cases where that error was still made. And a lot of them are closed. There are cases before the Supreme Court this term talking about what happens when you don't appear on one of those. But in my client's situation at the time, you have a choice. You either investigate and find out on your own, somehow, where your case is, what your hearing is, when your hearing is. Or you risk an abstention, an abstention denial. But that's the case in the Supreme Court. This case, circling back to prejudice, the immigration judge says, you're here, shall we proceed? And it seems like you could say, you can argue that it's jurisdictional, I suppose, but you could also show that there's some harm, injury that's arisen from the defective notice, and it can then be fixed in the immigration court. Well, and that is essentially what my predecessor in this case attempted to do after it was clear, after it became clear post the decision in Pareda that the statutory language should have some teeth. She made that motion to terminate. Now, at the time, the issue was perceived as and framed as one of jurisdiction. The distinction between jurisdiction and claims processing is one that has bedeviled the circuit courts and the Supreme Court. So I don't know how it is reasonable to expect a pro bono attorney in an agency action where most of us had not heard of anything related to claims processing prior to the last two years. Is that true of the respondent as well, that it would be unreasonable to expect the respondent, or default the respondent, the government, for challenging exhaustion based on the failure to assert a jurisdictional defect as opposed to a claim processing defect? I think similar rules should apply, okay? I mean, now you're getting into the exhaustion issue, and 1252-D1 does not require exhaustion of specific issues, and so what do you do, okay? So before you... I mean, the first issue that you need to decide, okay, is what are the outer parameters post-santos-dekarian of your doctrine of exhaustion? Sorry. Because Garcia-Carvajal rests on shaky foundations. It's not entirely overruled, but if you trace back the authority that it is based on, at some point or another, all of it intersects with issues that the Supreme Court discussed and decided differently in santos-dekarian. Well, if it hasn't been explicitly overruled, then doesn't that mean that we're bound by Garcia-Carvajal with regard to its applicability to a claims processing defect? After all, you know, we recently held in Vincent v. Garland that if we have a precedent that hasn't been indisputably implicitly overruled by the Supreme Court, we're bound by it. Or you can do what your colleague Judge Ebel suggested in Robles-Garcia, which is reconsider and reestablish that precedent on more solid legal footing. Is there something about Garcia-Carvajal's reliance on jurisdiction as the... with regard to the requirement for the same legal theory that would logically make it inapplicable when exhaustion is raised with regard to a claims processing defect? And if so, what is it? The biggest issue there, okay, is that post-Santos Zecaria, Garcia-Carvajal and jurisdiction can't rely on the language of 1252 D1. You can't rely on that language. So you've got to look elsewhere for the authority for your claims processing argument. And are there other locations? Yes. But most of them are judicial provisions. And the Supreme Court's line of cases looking at exhaustion where it is not explicitly statutorily required has significant cautions about the use of judicial exhaustion in the space of agency actions. It doesn't say that it shouldn't be used. But let me get back to my example, okay, which you will remember. So, last fall, I argued a case before you which was dismissed because we didn't argue, prior counsel hadn't argued the issues at the Board of Immigration Appeals. And the exact same issue that we argued here is in this case. And I argued it to the board. And what happened? The board said nothing. The board ignored the issue. The board provided no feedback. So this court isn't able to provide feedback, and the board isn't providing feedback, and nothing is changing as we try to reopen. And I believe that one way of looking at sensu saccaria is that it offers this court the opportunity to do exactly that. To look at how we're using exhaustion to turn the nozzle and broaden or widen the nozzle on what cases and what feedback is provided. At the time that I raised it, I didn't know what. I knew that it was wrong. The violation of the statute was wrong. The violation of the regulations was wrong. Did we know at that time what the agency precedent was going to turn out to be? No, we did not. And I will reserve. Thank you, counsel. Good morning, Your Honors, and may it please the court, Michael Tyson on behalf of the respondent, the Attorney General of the United States. Claims processing rules are about the orderly progress of litigation. Petitioner has just conceded that petitioner failed to raise a claims processing argument before the agency, and that's why exhaustion matters. Exhaustion is a statutorily required claims processing rule. It's mandatorily enforced if there's a timely objection raised regarding exhaustion. Well, let me just ask on that point, does it really matter whether the NTA shortcomings are labeled jurisdictional or claims processing to preserve the issue, especially when the question was somewhat in flux at the time? There was certainly discussion as to what the nature of the rule is. Jurisdiction obviously has a much larger impact in terms of the agency's ability to carry out its functions. If the immigration court lacks jurisdiction over a petitioner because the charging document, this would be somewhat like a criminal case where the complaint was defective, improperly served, anything of that sort that somehow deprives the court of jurisdiction over it, that case is over, whereas a claims processing rule, and that's consistent and consistent with why the agency and other courts subsequently have treated it as such, allows the case to go forward because it simply makes sense in terms of how these cases work. This is kind of mixing together a lot of arguments here in terms of what NTAs are. There's the statutory definition of an NTA. I appreciate the distinction you're drawing between jurisdiction and claims processing. I guess my question is, in context, when this came up, should it matter that it was at first called jurisdiction and then later called claims processing? Should it matter? Again, it's a question of what's the effect? What's the impact of it being jurisdictional? It's a question of whether or not the NTAs are in fact defective for failure to include the time and place. So it's kind of a two-step inquiry there. Does that make that defective? If the NTA does not state the time and place, does that make it defective? If it's defective, does the immigration court then lack jurisdiction over it? If yes to both of those, that case is over. Department of Homeland Security can perhaps reissue a notice to appear. The individual is presumably still removable, whereas a claims processing role is more consistent with how the agency handles these kinds of cases and has. Patricia was complaining about how this has happened over years and calls it, I believe, a quality control feedback loop. That's the first time we've heard that here. But the point is the difference between the statutory definition of an NTA and how the regulations came about to help the immigration court manage its own docket are two different things. So you're contending, though, if I'm understanding correctly, that petitioners failed to exhaust the claims processing argument. Where in your brief did you make that argument? In the opening brief? Well, twice, actually. I believe this is from memory. I reviewed the brief. I didn't write it. Page 16 footnote 4 mentions new issues related to the NTAs that petitioners failed to exhaust. The opening brief primarily discussed issues that were attempted to be raised before the board or related to issues that were in fact related to the board things regarding the NTAs themselves but not as a claims processing. Well, as Your Honor pointed out, petitioners raised a due process based argument that vaguely mentions claims processing but it never actually developed the, I believe it's 11 page claims processing argument that was in their opening brief. But then in our supplemental brief in response to the court's first request for supplemental briefing about Santos-Zachari, we mentioned again the failure to exhaust. We have consistently raised exhaustion here as to a number of issues and that captures the claims processing question. Then again, this court in the second supplemental briefing request asked, can the court consider exhaustion sui sponte? It certainly can. Parties actually agree on that. There wasn't a lot of discussion about that in petitioner's primary argument. Again, the court may not do so sui sponte here because the government raised exhaustion and timely did so. That said, if the court feels that the claims processing objection wasn't sufficiently directly addressed, the court can reach the exhaustion point for several reasons. Primarily being that the statutory structure supports the court enforcing the exhaustion requirement. Again, it's a mandatory claims processing rule that if the objection is timely raised, must be enforced. But it also should be enforced in terms of the comedy of concerns because we have two branches of government here. The executive is charged with managing foreign policy, which directly relates to immigration. And it's this court's review of agency action which is subject to highly deferential standards of review like substantial evidence, clear error, things like that. But also the efficiency of it because listening to petitioner's primary argument, one is left asking what is the point? What are they after? What are they hoping to accomplish? Because the result is simply you showed up or you should show up or you'll come back. You're still removable and it's about the timeliness of raising the objections. It's about... The board didn't rely on timeliness, did it? Did the board rely on timeliness? Yes. Trying to recall exactly whether or not that was raised because that relates more to the claims processing rule. That's a matter of Fernandez. At one point in your brief, I think you argued that it was untimely, that the Yes, absolutely. But did the board say that it was untimely? The board's statement about timeliness was probably best encapsulated by the fact that petitioner's conceded proper service, conceded the facts as alleged in the notice to appear, in fact appeared, admitted the facts in the notice to appear and conceded their removability. Didn't raise the objection until filing a motion that terminated three years after the issue appeared. I'm looking for something a little more direct here. Did the board rely on timeliness to deny relief at that stage? Because if it didn't, wouldn't we be precluded by Chenery in relying on that? If it's a question of whether or not the word timeliness appears in the board's or timely appears in the board's decision, I don't have the agency's decision in front of me, unfortunately. I don't believe it does. I don't recall seeing that. But again, the point is when the objection is raised and conceding proper service actually showing up is the same thing. Maybe the word isn't there, the exact timely word isn't there, but the effect is the same.  Should there be a prejudice requirement? And there certainly should be here because there's no question that the objection is not timely. What authority do you have on that? That a prejudice requirement would apply at this point? Well, it's kind of the inverse of Fernandez. Fernandez says there's no prejudice requirement if the objection is timely raised. So that begs the point of if the objection is not timely raised, it's kind of getting back to a mix of a due process claim. If you want to raise this kind of argument, a claims processing argument long after the fact, in fact almost three years after the fact here, certainly some prejudice has to be shown. Well, I guess I'm looking for your bottom line. I'm looking for Petitioner's bottom line. Well, I'm looking for yours. If we were to go in your direction here, is it because of failure to exhaust? Is it because of timeliness? Is it because of lack of prejudice? What is it? Exhaustion would be the easiest route. And that, again, is consistent with how this  Congress required, or limited, this Court's review to issues only exhausted before the agency. It's pretty remarkable Petitioner claims that, quote, 1252D1 does not require exhaustion of specific issues. It absolutely requires exhaustion of specific issues. The Petitioner did, before the BIA, argue that the notice to appear was defective under the statutory and constitutional requirements for due process. The statutory requirements would include the statute in which the Supreme Court had relied upon in Pereira. Why, then, do you say that the Petitioner failed to exhaust the service-related challenge regarding the validity of the NTA before the BIA? Because they appeared before the immigration judge, admitted the facts in the notice to appear, and conceded their movability. They could have raised an objection at that time. Whether or not it was jurisdictional. Well, as I understand it, they relied on page 2 of the motion to terminate in which, or the BIA did, in saying that counsel had waived service. He didn't waive, I didn't see anything in the BIA's opinion to suggest that they had waived this Pereira issue. Those seem to be rather distinct. Yes. The Pereira issue was subsumed by the fact that I believe it was a matter of Bermudez-Cota, it was an intervening decision that held that the NTA service requirements or any defective NTA issue did not deprive the immigration court of jurisdiction. Because that was kind of the point of Pereira. So that was raised, yes, the jurisdictional point, and it was subsumed by I believe also a decision from this court. So they relied on jurisdiction. And you relied on jurisdiction in challenging exhaustion. You didn't in your red brief, in your first supplemental brief, you didn't challenge exhaustion based on the failure to assert a claims processing defect, did you? No. Because at that time, exhaustion was nationwide considered jurisdictional prior to Santos-Zacaria. Zacaria had preceded your first supplemental brief, though, and your red brief, right? Santos-Zacaria did not precede our red brief, I don't believe. But it certainly preceded your first supplemental brief. But if that justifies your point about what the government said about exhaustion, why wouldn't it also justify the petitioners having referred to this as jurisdictional before the agency? Certainly an interesting question. It's again a question of what is the result. The result doesn't change whether or not exhaustion is jurisdictional or claims processing here. If timely raised. So that gets back to your Honor's question about was it timely raised. That's what Fernandez says, because it requires that the claims processing rule to be timely raised is raised before the close of pleadings. And pleadings were taken here in I believe November 2017, and the motion to terminate, which was based entirely on jurisdictional points, even though the claims processing rule had been raised in other cases long predating that, that wasn't filed until February 2019, long after pleadings had been taken. So then that gets into the question of whether or not there's prejudice. But exhaustion again involves an almost more important question, because it's about the agency bringing its expertise to bear on a question. The beginning of a case, the charging document itself doesn't really say anything about the merits of a case necessarily, other than what the charge is and what the facts are to support it. It doesn't say what the government is going to argue as to why those things are correct. It doesn't have the actual facts in front of it. But exhaustion is a much bigger question. It's about the agency bringing its knowledge, its expertise to bear on an issue. A specific issue, yes, that has to be raised for this court to be able to do what it does in terms of reviewing that. If the court is reviewing unexhausted claims, it's going beyond charges. It's deciding things that the agency hasn't addressed yet. And there's certain points that the court can address. Pure questions of law, things like that. Unless there's some kind of statutory ambiguity, we're kind of getting far afield here. But exhaustion and a notice to appear are very distinct concepts. So in terms of whether or not it's good for the goose, good for the gander, in terms of claims processing versus a jurisdictional argument, it doesn't have the same impact when it comes to the agency bringing its expertise to bear on a particular issue. Court has no further questions? Thank you. Thank you, counsel. Could you give Ms. Jones one minute, Lisa? To answer your Honor's question, Judge Matheson, the agency's applicable precedent on the question of timeliness of our objections is a matter of Rosselli-Targus. And they were considered timely in that case in pretty much the similar kinds of situations that our clients faced. In the case of Rosselli-Targus, my question is whether the BIA relied on that. No, the BIA, and that gets to my final conclusion here, the BIA did not apply its own precedent. And that is the clear error that is the issue and should be the basis for remanding this case to the board to decide, as they've asked for supplemental briefing, what the remedies are. Because under matter of Rosselli-Targus, the claim was timely. Under matter of Fernandez, no harm is required and it is a claims processing issue. And the fact that the board failed to apply either of those cases, arguably in reliance on this court's strict, you have to raise the same legal claims to the exhaustion requirement that the identical legal claim has to be raised. What remedy do you want from the BIA if we remanded it? Your Honor, 95% probability if this case gets remanded, somebody from OPLA reaches out to me and says, we're terminating within three weeks. It's happened before, it'll happen again, that's what will happen. The BIA is just closing these cases because that's their way of handling them. But what relief do you want from them? What relief do I want from them? They need to figure out what the appropriate relief is. In this case, I don't disagree that at this point, termination would be the appropriate remedy. Had the government looked at these errors the way they're looking at them now and first of all, avoided them and second of all, dealt with them I included in our packet and supplement examples of what the judges are doing in the courts today and some of them are dismissing and some of them are not I can't tell you what I expect the agency to do because the agency itself hasn't decided. If the agency upon remand chooses to apply its new precedent, whatever that may be then so be it. I will trust that outcome. Thank you.